THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* CENTRAL CAMBALACHE, INC., Defendant and Appellant.

No. 5638. Argued December 11, 1934.—Decided February 15, 1935.

*M. Santoni* and *M. Cadilla Ginorio* for appellant. *R. A. Gómez, Prosecuting Attorney,* and *Luis Janer, Assistant Prosecuting Attorney,* for appellee.

Mr. Chief Justice Del Toro delivered the opinion of the court.

The District Attorney of Arecibo filed an information against the Central Cambalache, charging it with a violation of section 12 of Act No. 135 of 1913 (Session Laws, p. 100) —the Weights and Measures Act—consisting in having used for measuring ditching work that was being done by some of its laborers at an agreed price of thirty cents per linear *cuerda,* a wooden rod that had not been tested as provided by law.

A demurrer filed by the Central having been overruled, the case went to trial, and it was proved that for measuring each linear *cuerda* of ditching work, use was made of an untested wooden rod which, as one witness stated, was generally known as *vara conuquera,* the length of which was three Castillian *varas.* Measured twenty-five times, it gave the *cuerda* of seventy-five *varas* that served as a basis for fixing (*ajuste*) the price of the work. The court found the Central guilty not only of the violation specifically charged but also of a violation of the provisions of section 14 of Act No. 135 of 1913 (Session Laws (2), p. 100), as amended by Act No. 30 of 1921 (Session Laws, p. 180), consisting in having used a measure unauthorized by law.

Feeling aggrieved by that decision, the Central took an appeal. It insists that the information does not state a public offense, and maintains that neither did the facts proved at the trial show the commission of a crime. The Prosecuting

Attorney (*Fiscal*) has not opposed the appeal, as it involved an agricultural transaction not covered by the statute, according to the decision of this court in the case of *People* v. *Beauchamps,* 25 P.R.R. 559.

On August 18, 1913, there was approved Act No. 135 of the Legislature of Puerto Rico, which provided that the metric system of weights and measures and the imperial system customarily used in the United States in so far as described in the Act, should be recognized and established for use in all industrial and commercial transactions carried out in the Island, with specified exceptions, and the use of any other system in said transactions was declared unlawful. Section 1 of the act.

The metric system had been adopted in the Island for a long time before that. It was established in Spain by an Act of July 19, 1849, the provisions of which were made extensive to Cuba and Puerto Rico by Royal Decree of April 22, 1882. The regulations for the enforcement of the act were also approved on April 22, 1882. They are elaborate and complete. 128 *Colección Legislativa de España,* 592.

The *cuerda,* used in Puerto Rico from time immemorial, forms no part of the metric system. Its use, however, persisted. Thousands of titles recorded in the registries of property contain the measurement of the land in *cuerdas,* with its equivalent in the metric system. Subdivision 1, section 9, of the Mortgage Law.

Act No. 135 of 1913, itself, says in its section 4:

". . . In land measurements and records the measurement by cuerda customarily used in Porto Rico, which shall be equivalent to 4046.94455 square meters, may also be used."

In agricultural work—plowing, planting, and cleaning of plantations and the gathering of crops—the *cuerda* continued to be used as a unit of measure for estimating the work and the payment therefor. The appellant maintains that the *cuerda* was and is used not only as a measure of area but

also of length, and cites the "Report on all administrative branches of the Government of the Island of Puerto Rico, submitted to the Central Government by the Colonel of Infantry, Don Pedro Tomás de Córdoba, in 1838, at the direction of His Excellency the Governor of the Island of Puerto Rico, Lieutenant-General, Don Miguel de Latorre, Count of Torre Pando (Madrid, Printed by Yenes.—1838)," which says on page 49:

"LAND MEASURES OF PUERTO RICO.—In this island the land measure is called 'caballería.' It is 10 linear cuerdas in width by 20 in depth or length. The cuerda is equivalent to 25 varas de tarea, and this vara contains three Castillian varas. Therefore, it is composed of 200 surface cuerdas or 1,925,000 Castillian varas, and is 25 per cent larger than that of Santo Domingo; it also contains 6 Cuban caballerías."

That evidence really tends to show that in effect the cuerda is used in agricultural work as a linear measure having seventy-five varas.

In view of the existing situation, the Legislature, on May 6, 1919 (Session Laws, p. 104), legalized the use of the cuerda for other purposes beside the surveying of lands. It amended section 16 of Act No. 135 of 1913 (Session Laws (2), p. 100), as follows:

"Section 16.—All transactions involving the purchase, sale, transfer or transportation of any property or of any goods, wares or merchandise, or the purchase or sale of any work, task or service the value of which is computed by the use of measures of weight or any other measure except that of time, shall be conducted in accordance with the weights and measures authorized by this Act; Provided, That the purchase and sale of such goods, wares and merchandise, as are usually or customarily sold or dealt in by the article, piece or number shall not constitute a violation of this Act, nor the use of the measure known as 'cuerda' when the same is employed in agricultural job work."

The appellant maintains that as the act expressly provides that the use of the cuerda in such work shall not constitute a violation thereof, it has committed no offense in using the

*cuerda* for that purpose, as alleged in the complaint and shown by the evidence in the instant case.

As the *cuerda* is an authorized measure, it seems natural that it should be tested in order duly to use it, the same as the other measures established by law, but it must be acknowledged that the contention of the appellant, considering the form of the authorization, is of weight.

The very evidence of The People showed that the Bureau of Weights and Measures of the Insular Government has no standard for checking the Castillian *vara* or the *conuquera* of three *varas* that is generally used for measuring the twenty-five *varas* that constitute the *cuerda*.

But there is something more that militates in favor of the reversal of the judgment, and that is the decision of this court invoked by the Prosecuting Attorney (*Fiscal*) in support of the appeal. We refer to the case of *People* v. *Beauchamps, supra.*

In said case Beauchamps was charged with a violation of the Weights and Measures Act, consisting in having used for measuring coffee gathered by the harvesters, a kerosene-oil can supposedly holding an almud, without the measure having been officially authorized.

In the course of this court's opinion, delivered by Mr. Justice Aldrey, the following was said.

"In the court below the defendant demurred on the ground that the acts charged do not constitute an offense because the Weights and Measures Act and its regulations refer to industrial and commercial transactions and he is not charged with having engaged in any such transaction, inasmuch as measuring coffee berries gathered by the pickers on the plantation shows that the measure was used in agricultural employment which is not within the purview of the act. . . .

"The Weights and Measures Act of August 18, 1913, which is found at page 100 of the volume of 1914, was enacted to establish standard systems of weights and measures in industrial and commercial transactions, and we agree with the appellant that gathering the products of a farm is not an industrial transaction, but merely an agricultural pursuit.

"*          *          *          *          *          *          *

". . . . There must be something more than the mere exercise of the physical force necessary to gather fruit from a tree, as berries from a coffee tree, to justify the conclusion that an industry is being conducted; therefore we cannot hold that the mere gathering or growing fruits is an industry, although it may be that when combined with subsequent intellectual acts for the purpose of chang'ng or improving the products so gathered the combination may constitute an industry, in which sense, for example, the planting, gather'ng and preparing of coffee for the market may be termed a coffee industry; yet the mere gathering of the berries, we repeat, is not an industry but an agricultural pursuit.

"Consequently the use by the appellant of a measure d'fferent from those prescribed by the act for use in industrial and commercial transactions for the purpose of paying the coffee pickers on the farm managed by him does not fall within the provisions of the act for the violation of which he was punished, although the regulation of October 20, 1914, provides that in the gathering and transferring of coffee berries the measures authorized by the act in industrial or commercial transactions must be used, inasmuch as the act made no provis'on for the gathering of fruits."

Here, as in the *Beauchamps* case, there was involved agricultural work not included in industrial and commercial transactions regulated by the statute. Section 12 of the act, the violation of which was charged, provides: "That from and after the first day of February, 1914, no . . . measure, . . . shall be used in any industrial or commercial transaction . . . until the same has been . . . tested . . ." And section 14, which was held by the court to have been infringed, provides that: "No person shall use . . . any . . . measure . . . which does not conform to the standard . . . measures prescribed by this Act, . . ." Laws of 1913 (Special Session), p. 103, and Laws of 1921, p. 178.

The decision in the *Beauchamps* case was rendered in 1917 and nothing to the contrary has been enacted by the Legislature, notwithstanding the fact that the act was amended in 1919 and 1921. On the contrary, it was the amendment of 1919 which provided that the use of the *cuerda*

measure in agricultural piece-work should not constitute a violation of the law.

Under such circumstances, we can not possibly hold to be unlawful the use of an untested *vara conuquera* for measuring the *cuerda* in agricultural piece-work, and therefore the appeal must be sustained, the judgment appealed from reversed, and the accused discharged.